May it please the Court, my name is Michael Murray. I appear on behalf of the plaintiff's appellants in this case. Your Honors, Senate Bill 315 prohibits adult bookstores, adult video stores, adult arcades, and adult nightclubs from employing or contracting with adults ages 18 to 20 in any capacity. The goal and purpose of the statute is to reduce human and sex trafficking that was of concern to the legislature of course, but the pre-enactment submissions to the legislature and the post-enactment evidence offered at the bench trial to support the law focused pretty much exclusively on dancers at adult nightclubs being vulnerable to sex trafficking and this led the district court to make certain critical factual findings based on the evidence that the court heard. He said Senate Bill 315 plainly regulates more than necessary to stop sex trafficking as it prohibits all employment of 18 to 20 year olds at businesses. This ban applies regardless of whether those employment positions are considered vulnerable to sex trafficking. He also wrote employees in other roles other than dancers are not likely to be trafficked. Senate Bill 315 he said sweeps broader than necessary and finally he said Senate Bill 315 regulates broad swaths of employment regardless of whether they are tied to sex trafficking. Now none of these factual findings are clearly erroneous. Indeed these factual findings were compelled by the evidence. Consider the defense expert who was the prominent witness for the defense in the case. Her report, her testimony, the surveys that she did for Thorne, her analysis of 1,500 federal prosecutions throughout the nation over 20 years, 29 of which in those 20 years had a nexus to adult nightclubs, all related to dancers being vulnerable to becoming victims of sex trafficking. She testified that she had no evidence any other employees at adult nightclubs besides dancers were potential victims. She said there was no evidence at all that she had that any employee of an adult bookstore or adult arcade had ever been victims of sex trafficking. And her surveys for the Thorne NGO offered no evidence that employees of adult nightclubs other than entertainers. What's the cut line? You say the factual determinations are not erroneous? You just say the trial court reached the wrong conclusion based on those facts? Yes. It will sort of, you know, go to the jugular, you know, we know the facts and so forth. So you're not quarreling with the factual findings? No, we're championing those factual findings, but we think this court gives de novo review to the legal conclusions that flow from those factual findings. And the district court determined that the statute nonetheless passed constitutional muster on the theory that the employees at adult bookstores and adult arcades and the non-entertainer employees at nightclubs were not engaged themselves in expressive activities and that therefore their jobs were not intertwined with protected speech. We think that was wrong as a matter of law for two reasons. First of all, let's talk about adult bookstores. The employees at adult bookstores, the managers, the clerks, the personnel necessary to operate the business sell constitutionally protected videos and DVDs and magazines. They stock the shelves. They recommend material to the customers. They enable the customers to see the videos. And that's all first amendment protected activity on the part of those employees. They're engaged in speech. And so we think the court was wrong in concluding that their jobs were not intertwined with speech. That's, that was their entire job was to disseminate the speech. And you look at the Supreme Court cases in the obscenity field, I think is an interesting way to look at it because just about every one of those cases where the Supreme Court was deciding issues under the Miller test and in obscenity prosecutions involved charges brought against store clerks or store or theater managers for selling or disseminating allegedly obscene materials. That was the case in the Rodin case, in Heller, in Logee Sales, in Macon versus Maryland, and in Pope versus Illinois. The, um, and so the defense of course, in those cases would have been, no, the material is not obscene. And therefore the clerk did not commit a crime by selling the material. Rather, the jury would have to decide whether it crossed the line from protected speech to obscenity, but it demonstrates that the store personnel are themselves indeed engaged in expression when they're doing their jobs. And so therefore, Your Honor, we think that the, um, but your opponent says it's doing the employees work, the employees statements, as opposed to their own. So they're saying X, Y, Z, X, Y, Z, even though in their heart, they're thinking ABC, ABC. And so how, how does that connect to the first amendment? Well, because the case that they cite for, whether it's employer speech or not, had to do with, uh, whether an employee could be fired for engaging in certain speech. And this court held that, um, no, the speech was protected. Um, and it distinguished the cases where, uh, Garcetti established the proposition that if an employee's job, for example, is to give testimony in court, then he can't claim that he was fired, uh, because of his first amendment activity. However, they never said that he wasn't engaged in speech activities when he's, when he's doing it. But an employee speaking for an employer, tell me your best case that says that is still a first amendment right? Well, I think those Supreme Court cases that established that, that when you're, when the clerks are selling the material, they can be prosecuted for selling obscene material. I think that the, um, um, that justice Scalia's opinion in, in the McConnell case that demonstrates that all speakers need other people to help them get their message across. I suppose, are we saying that, for example, in a news broadcaster who simply on the six o'clock news, read somebody reads what somebody else wrote that he's not engaged in first amendment activity? Of course he is. I think your honor. Um, and it's not just that the station, uh, is engaged in first amendment activity. All of the cogs in the distribution of the speech are engaged in expressive activities. And so we submit that, that, that clearly clerks and store managers are engaged in first amendment activity when they sell and stock those materials. And we think that it went, when it comes to the adult nightclubs, the employees, other than dancers, are also engaged in helping the show go on. And as justice Scalia wrote, um, how, how exactly did, he put it? He put it that, um, in any economy operated on even the most rudimentary principles of division of labor, effective communication requires the speaker to make use of the services of others. An author may write a novel, but he will seldom publish and distribute it himself. A freelance reporter may write a story, but he will surely edit, uh, print and deliver it. But, uh, but he, he may not, he rarely will edit, print and deliver it to the subscribers. He needs other people to do that. So the cause, the speech, uh, even in an adult nightclub, the people that play the music, that make sure the lighting is proper, that serve the customers, that do everything to make sure that the performances are presented in such a way that the club's main of presenting constitutionally protected performances to the audience is successful without those. I mean, I'm deeply respectful of the first amendment, but I guess I'm thinking, well, I mean, under 21, you can't drink alcohol, but you might want to go to the bar to talk and be able to have it and all that. And so that by drinking alcohol, you could talk better and so forth. Would that be in a first amendment claim to try to change that law? No, I think that the, uh, the, the question of, of age for, for alcohol consumption outside of a content-based prohibition, if for example, they said that, um, uh, people under 21, adults under 21 could drink at a bar owned by a Republican, but couldn't drink at a bar owned by a Democrat, that would be unconstitutional. But, uh, but a general freestanding law that sets age limits for the, uh, the right to consume alcohol has nothing to do with content-based and therefore, um, the first amendment wouldn't be implicated. But there's a second reason, Judge Haynes, that, um, the court erred, which I think is equally important. And that is it didn't give enough, uh, credence to the court of appeals, opinion, your, your court's opinion in illusions Dallas private club versus steam. And remember in that case, it issue was a statute prohibiting sexually ointed businesses in dry districts from obtaining private club permits to serve alcohol. The state argued in defense of that law, that it didn't even implicate the first amendment because serving and consuming alcohol was itself not protected by the first amendment. And this court agreed with that. Yes, you're right. It doesn't. The consumption and service of alcohol by itself is not a protected first amendment activity. But the court said that nonetheless, the burden of that statute that was being attacked fell upon the sexually ointed businesses themselves. They were the ones who were directly prohibited from serving alcoholic beverages to their customers. And so because the burden was imposed upon the sexually ointed businesses, even though the underlying conduct itself was not protected by the first amendment, that regulation had to further the substantial governmental interest that was the Genesis for that statute. And it had to meet intermediate scrutiny in order to be upheld, even though that underlying conduct itself was not protected by the first amendment. Here, of course, the burden of Senate Bill 315 falls entirely in terms of liability upon the sexually ointed businesses themselves. The prohibition at each step of the way in Senate Bill 315 is that an adult video store, an adult nightclub, an adult arcade cannot contract with or employ adults ages 18 to 20. So the burden is actually upon the sexually ointed businesses themselves, just like in the illusions case, the burden was on those businesses. And so while we maintain and are strong on this point, that the underlying conduct by the employees of adult bookstores and arcades, they're actually engaged in first amendment expression, and we also maintain that the non-dancer employees at adult nightclubs, because they're necessary to make the show go on, their job is also intertwined with the protected speech that is offered by the, but even if, even if none of that were true, even if none of the employees at adult bookstores and none of the non-entertainer employees at adult nightclubs were themselves engaged in expression under illusions, because the burden of the statute falls upon the sexually ointed businesses themselves, that prohibition on hiring 18 to 20 year olds must still satisfy intermediate scrutiny and must still further the governmental interest that is the basis for the statute. And as applied to adult bookstores and as applied to non-entertainer employees, it fails that test because the evidence didn't support it and the factual findings of the district court that those, that applying it to those businesses and employees doesn't in any way further the governmental interest in reducing human trafficking, that by itself renders the statute unconstitutional under the first amendment. It also renders it unconstitutional due to overbreadth then. And even though, I see my time is up, but, and we've covered in the brief what the arguments were as to even as applied to the entertainers, the prohibition on 18 to 20 year old does not survive intermediate scrutiny, because in the Landry case, for example, the Louisiana statute was upheld only because it was limited to entertainers at licensed alcohol establishments. And they suggested that if it went beyond that, it would be unconstitutional. Here, of course, they can't hire entertainers no matter what the sexually ointed business is. And I see my initial time is up. Thank you so much. Thank you, Mr. Murray. You've reserved your rebuttal time. We'll hear from Mr. Mendelson. May it please the court. Hundreds of uncontested pages of evidence show what is obvious. Sexually oriented businesses run rampant with human trafficking, sexual abuse, commercial sex, and other crimes. Raising the age of employment in those businesses to 21 is a modest attempt to solve those problems. It also inescapably passes the Renton test in light of the district court's factual findings that sex trafficking occurs in these businesses at higher rates than other venues and that young adults are frequent victims of trafficking. I want to address three points today. The first is the proper intermediate scrutiny standard to apply, because my friend on the right, why the state has a reasonable belief that raising the age of employees at these businesses to 21 will help to combat these problems. And third, why the law leaves open reasonable alternative avenues of communication, the second prong of the Renton test that my friend also did not address. So I want to begin with that proper standard. And of course, Renton explains that a regulation will be upheld if it's designed to serve a substantial government interest and allows for reasonable alternative avenues of communication. As to that first prong, this court held in club executives that all Renton demands is evidence reasonably believed to be relevant to the problem, and club executives explained the standard doesn't require the state to forge an ironclad connection between the businesses and the secondary effects, or even to produce studies examining the same conditions at issue. I also want to explain, well, what does reasonable alternative avenues of communication mean, because my friend's argument and his briefs are internally inconsistent on this point. Note seven of his opening brief, he says Renton is the more accurate test to apply, even though the O'Brien and Renton tests are much the same. And then just as you heard him do, he began to cite lots of cases that are not secondary effects cases. Cases like the McConnell case, which is a campaign finance law case. Cases like McClellan v. Coakley and Hines v. Perdue from this court that don't apply the secondary effects test. And there's an important distinction, I think, because what he's argued in his brief is that the state has to show that other laws that would restrict speech less wouldn't work. That is not what Renton said. That is not what footnote eight of club executives said. Footnote eight of club executives says that the court has observed that restrictions on sexually oriented businesses have to be narrowly tailored, but that later precedents have explained that a restriction that satisfies Renton's formulation is necessarily narrowly tailored. In other words, what Renton held, this is page 54 of Renton, and this is important, is Renton says the First Amendment requires only that the city refrain from effectively denying the respondents a reasonable opportunity to operate an adult theater. That's what reasonable alternative avenues of communication made. And my friend on the other side is suggesting our burden is higher. It's not. He also spoke a lot about the Illusions Dallas case, and this is important. The Illusions Dallas case only stands for the proposition that if the state directly regulates a sexually oriented business, then we have to apply the Renton test in the first instance. That's a very different question from whether the law ultimately passes the Renton test. And he's using the Illusions Dallas case to conflate a factual finding with a legal standard. And what I mean by that is this. He emphasized that the law, according to the district court's factual finding, well, it regulates more than necessary to stop trafficking. That's a different question from whether it still nonetheless leaves open reasonable alternative avenues of communication. The two are not mutually exclusive and the two are not inconsistent. And that's a very important point about why that factual finding ultimately doesn't matter. So now I want to talk about, well, why does the state have a reasonable belief that if you raise the age of employment to 21, that it will help to protect problems about human trafficking, dancers at strip clubs and non-dancers at strip clubs and adult book and video stores. I want to talk about why there's a reasonable belief as to all those. So let's begin, of course, with the factual findings. This is at record 11403. The district court said that the defendants have introduced convincing evidence that sex trafficking occurs at these businesses at higher rates than others and that young adults are the frequent victims of trafficking. Well, that, of course, is a factual finding that applies to all three types of businesses or all three types of employment. As to the dancers at strip clubs, and this is at record 11407, the district court said, well, these are the employees that are most likely to be trafficked. That really ends the reasonable belief inquiry as to the dancers at strip clubs because that's a factual finding. But even if it didn't, there are unfortunately a lot of stories that we highlighted in our brief that very clearly back that up. Perhaps Nisi Hamilton's testimony in front of the legislature where she explained that she was trafficked as young as age 16 and there was a pimp who had relationships across Houston with strip clubs and they gave her makeup even though she was 16 so that she could pass for 18. But she said she couldn't pass for 21. There's how the parent company of the two strip clubs that are before the court right now recently purchased the Chicas Locas strip club in Houston, the site of the Department of Justice's major recent human trafficking conviction. My friend on the other side didn't address this, but every single evidentiary argument he raised in his brief is forfeited. That's because they're not in the issues presented statement. In the United States v. Quintanilla, a published opinion of this court that came out just a little bit before he filed his opening brief, it's squarely held. If I understood his argument, he's not pushing back on any of the factual findings, seemingly. He says he accepts the record, you know, as found. So as we read the briefs on the factual findings, but of course, obviously, our judicial court erred, but it's in effect, I guess, urging some kind of de novo review of the facts. So we give a different take on it. But I don't want to misstate his argument, but I was zeroing in closer to see what fact findings he was traversing, but I didn't hear any. He's not at the podium. So the findings of the district court, what he's zoning in on is the district court's statement, yes, but the law regulates more than it needed to and seemingly wanted to hone in on that quote statement by the district court as implicitly, you know, making his argument that it goes further than it needs to. Right. That's the way I'm appreciating all of you want to accept the facts, but say once the district court said what it did, you know, it's somewhat runs counter to the legal determination made. Well, it doesn't run counter to the legal determination because that a law regulates more than necessary as a matter of fact, is a separate question from whether there are still reasonable alternative avenues of communication. So let's address that point right there. So the most important thing is that all of the plaintiffs admitted that nothing about this law changes their speech. And that's why we know they still have a reasonable opportunity to operate an adult nightclub, which is exactly what Renton requires. So this is their own experts. This is the business model of strip clubs that had hire an 18 year old girl. And he, and she again said, I don't think the age of the dancer is important. This is Ed on a car, the corporate representative for Ricks and XTC, the two strip clubs below before the court right now, this is a record nine, nine, six, two. They said they don't advertise the age of the dancers at all. They don't highlight the age of the dancers in any way. And finally, the adult bookstore, this is Gary Harstein's testimony, the corporate representative of the new fine art store. He said they have not changed their merchandise, their services, or their private rooms because of this law, that this law has not affected their profits in any way. That's at record 98 39. In other words, every single plaintiff before this court has admitted that nothing about this law has actually changed their speech or placed any actual, well, I don't want to say hasn't placed a burden on their speech, but hasn't affected their speech in any way within the meaning of the Renton standard. And the Renton standard is simply, do they have reasonable alternative avenues of communication? Renton holds all that Renton requires is, do they still have an opportunity to operate an adult nightclub? So the businesses are unaffected. I also want to talk about another argument that my friend has raised, and this is about, well, what about the employees? The first and most important thing about that argument is there are no employees before that court, before this court. They all turned 21. But nevertheless, I do want to be sure to address that argument for overbreadth purposes. And he's never responded to this argument. There is nothing about the language of this statute that prevents an 18 to 20 year old from engaging in nude dancing for profit at other venues other than sexually oriented businesses. There is nothing about the language that would prevent an employee of an adult bookstore from selling those same materials on their own just so long as it's not a sexually oriented business. And there's nothing about the language of this statute that would prevent an 18 to 20 year old, excuse me, from working at another business that sells these materials so long as it's not a sexually oriented business. And I want to break down what all three of those things mean, because this is why there's reasonable alternative avenues of communication. So the statute only applies to preventing people from working at a sexually oriented business or at a sexually oriented commercial activity. Those terms are defined as a commercial enterprise that doesn't include a private party, a private somebody wants to distribute material on their own, that wouldn't come within the definition of a sexually oriented business. And finally, novelty stores, joke stores, so long as the primary business, the statute uses the term, it's a commercial enterprise where the primary business is selling products or services that leads to sexual gratification, then you have to be 21 to work there. But if it's a minority of that business's revenue, of that business's business, for lack of a better term, then they could still work there. So not only have the businesses admitted that they all still have reasonable avenues of communication, but the statute is just a time specifically placed restriction on where the employees can work. Doesn't prevent any of the employees, none of whom are before the court anyway, from distributing this material on their own. So that's why there's still reasonable alternative avenues of communication. That's why that factual finding ultimately doesn't matter. And the other reason why that factual finding ultimately doesn't matter is because that doesn't mean that we still can't look to see how much speech this regulates, right? The Doe v. Landry case talks about, we should look at, does the law regulate substantially more speech than necessary? So my friend on the other side says, well, what about the Illusions Dallas case? Well, the Illusions Dallas case just says, let's ask ourselves that question. The fact is, most of the employees at these businesses aren't engaging in speech. The parking valet, the security guard, the bartender, that's not regulating speech. We're talking about those... What's your view of what he said in response to my question? I'm sorry? What is your view of what he said to my question? Well, I think I'm struggling to see that there's... I don't think there's a limiting principle at all to the argument that the show has to go on. I think if I understand the court's question to be, these are all employees that are somehow necessary. If I understand the court's question correctly, I think the response to that is that argument has no limiting principle. What that would mean is that there is no possibility that a state could ever regulate an employee at one of these businesses. The question that we have to ask is, well, are there reasonable alternative avenues of communication for all of those employees? The answer to that has to be yes, both because of what the businesses have admitted and because of how the statute sets. I want to talk a little bit about the employees at adult book and video stores. My friend on the other side seemed to suggest that, well, most of the evidence presented to the district court was only about the dancers at the strip clubs. Well, most of it, sure, but there was plenty that was presented about employees at adult book and video stores. And, of course, he cites the H&A Land Corp case, which just stands for the proposition that we have to analyze the adult book and video stores specifically. We can't lump them in with strip clubs. So let's go ahead and do that. This is at Record 11518. This is where Kara Pierce testified at preliminary injunction hearing. She said anywhere where there's a private room and there are people seeking sexual gratification can result in sex trafficking. And, of course, what I'm talking about is what Justice Souter called the commercially natural, if not universal, model, and that is the private rooms. That's what we're really concerned about. I think the whole thing with dancers is that a long time ago, the Supreme Court said that dancing naked is First Amendment. And so that is why that's a discussion throughout. Are there other issues where you're not actually saying something, but you are still using the First Amendment? Well, again, I struggle with that point right here, and that's because I don't think that any of the other employees are engaging in speech. My friend on the other side says, well, what about the adult bookstore? What about the person who is selling a book across the counter? First of all, of course, that book is the employer's property. The employee is acting with his employment capacity. All that person is doing is selling their employer's book. What if they want to say, this book is a great book. You should buy it. Well. Is that not First Amendment? Well, I think ultimately the court doesn't have to reach that issue if the court doesn't want to, and that's because we only have to ask ourselves, well, is there another place? Is there another time when that employee could do that? And because the statute would allow the employee to do that on their own or in a business that's not within the meaning of the term sexually-oriented business, I think ultimately the court doesn't have to reach that issue. We can assume arguendo that if the employee says, oh, this is a really good book. You should read it, that that's their speech. We can assume that arguendo. I don't think that's too much of a problem. But then we just have to ask, well, is this a place restriction, and do they still have another avenue with which they can sell that book or talk about that book or distribute that book? And I think the answer to that has to be yes. They can do that on their own, just not at the sexually-oriented business. And the reason we're so concerned about at the sexually-oriented business is because they have this business model with all of these private rooms. And we talked about quite a bit in the record about the trouble that these private rooms have caused. And just as a quick example, note 13 of the club executive's case, I'm not saying anything this court hasn't said before, is in that case the court said, well, there is evidence that the adult bookstores provide the opportunity to view and use these materials on site, which our precedents recognize as posing a greater threat of secondary effects than sexually-oriented businesses without such opportunities. And I would also point the court to record 6948, which is the Houston City Council report, where officers with Houston Vice said the bookstores are nothing more than blatant open sexual contact between people with complete anonymity. I would point the court to record 6519, which was an investigative report about an adult bookstore in Indiana. And finally, I would point the court to the Gary Harstein deposition. This is at record 9834 and 9535, where we asked the And he said, well, we allow two people inside of them at once, the doors lock from the inside, there's a couch inside, there's a table inside, there's a trash can inside. And I think this goes exactly to Kara Pierce's testimony when she said, any place like that, private room seeking sexual gratification can result in sex trafficking. So the larger point here is, yes, there's plenty of reasonable belief about the adult bookstores and why raising the age of employment there to 21 may help to combat the problem of sex trafficking. The employees are the ones that are there every day. They're the ones that are there most of the time. My friend on the other side says, well, how come there's not a sex trafficking conviction of an employee? Well, there is a sex trafficking conviction at New Fine Arts. That was Martavius Keyes. And again, every hearsay objection to that evidence is forfeited. It's not in the issue statement in his opening brief. But the point is, we don't have to forge an ironclad connection in the terms of club executives. It's enough for a reasonable belief to say, we have seen human trafficking convictions at these venues. We have evidence in the record that says, if there's a private room and people are seeking sexual gratification, Kara Pierce testified based on her experience that that's leads to sex trafficking. We have investigative reports from Indiana. We have investigative reports from the Houston City Council, from the Houston Vice Division. All of that together forms the reasonable belief. And because all of these employees and all of these businesses can still operate an adult business, can still have reasonable alternative avenues of communication, then for that reason, the business passes the Renton Test. And that's all the court need decide. The court doesn't ultimately need decide what an employee is doing, if the employee is engaging in their own speech or just the business's speech. The state, of course, can burden speech under the Renton Test. It just can't burden it too much. That's why club executives held that a city like Dallas can shut down strip clubs between 2 and 6 a.m. That's why Dovie Landry said, well, we can say the dancers have to be 21 if alcohol is being served. That brings me to another point about Dovie Landry. We don't apply expressio nius to a judicial opinion. That Dovie Landry said, well, it only applies to a law where the dancers are 21 and the business is serving alcohol. It doesn't follow from that by negative implication that it must be true that if the law applies to other places, then we don't start the Renton analysis over again. Of course, we start the Renton analysis over again. And I think the last point that I want to be sure to make is obscenity cases are not the Renton Test. Those cases about campaign finance laws are not the Renton Test. Those cases are an opposite. And, yes, the state can burden speech so long as it passes the Renton Test. And we ask that the judgment be affirmed. Thank you. Thank you, sir. All right. Back to you, Mr. Murray, for a rebuttal. Thank you, Your Honors. Here's what Renton said. And we champion Renton. It upheld a zoning ordinance of the city of Renton. And it made this point. The ordinance, it said, was narrowly tailored to affect only that category of businesses shown to produce the unwanted secondary effects. In that case, neighborhood problems. It affected only that category of businesses shown to produce the unwanted secondary effects. Here's what the judge said in the district court. The court wrote, as defendant's own witness testified, and this was the court's question to the expert, if the state of Texas had chosen to more narrowly tailor this law to the population that you've identified as the state's expert, as the population that is vulnerable and worthy of protection by this law, if they had narrowed it to just those people, and that is 18 to 20-year-old entertainers or dancers, would that address the vast majority of the risk and danger that you've identified as justifying this law? Dr. Boucher, I believe that that was the intent when I would say yes. And that's when the judge said, therefore, Senate Bill 315 plainly regulates more than necessary to stop sex trafficking as it prohibits employment no matter where the venue is. It affects not just the category of businesses shown to produce the unwanted secondary effect, which is human trafficking, but he says it goes beyond that and totally unnecessarily burdens adult bookstores, adult arcades, and adult nightclubs when it comes to non-entertainers. And he upheld the law only because he said, but he doesn't think that those jobs are intertwined with speech. Let me put it to you this way. The appeal is from the judgment, not the reasoning, okay? This should say a lot of things. You've already said you accept the facts. So, the appeal is on the judgment that's entered here, not necessarily all his reasoning. Lawyers disagree what judges say all the time. That's not enough. It's on the judgment. The judgment before us is to say that SB 315 withstands intermediate scrutiny, etc. He said, well, maybe he opined and was thinking out loud if he wished later. Sometimes we wish we hadn't put a sentence in there that later comes back to bite us, but we stay where we are. So, I just don't know if you can get to the end zone here just based on what the court said, taking it as true. But tell me, at least for me, how that gets you to home plate or the end zone just because he said it might have gone too far. The other side says, yeah, even if that's true, but the acid test is as long as there's reasonable other avenues of communication. He says that's the sine qua non. So, tell me how he's wrong or why he's wrong. He may be, but I want to know. Because, Your Honor, he did make factual findings, and those have to be respected. But he made an erroneous . . . He told me on opening, you accept the fact find. You're not traversing the facts. You know if you were up here on clear error, we wouldn't even grant an oral argument. I know, but . . . You say you accept the facts . . . Well, Judge, if he makes a finding of facts . . . Oh, let's go. Stop when I'm talking. I tolerate a lot, but that's not one of them, okay? Listen to the question. If you are up here arguing the trial court makes clear error or reverse, you know that's a slippery slope. You're arguing, I accept the factual records, but you're saying the legal conclusion from that is wrong. And you said on opening, but the court, this panel in effect should engage in, quote, the noble review on the point. And so, I'm saying rather than going back to telling us what the facts are in this record, explain how you overcome what the state says, even if it's too far or whatever. That doesn't make it constitutionally over broad. Just help us understand what gets you there legally for us to reverse on that. Because under intermediate scrutiny, they have to prove that the law actually furthers the substantial governmental interest that serves as its basis, human trafficking. Every . . . Well, the record is full of evidence. All these people saying all this trafficking goes on, et cetera, et cetera, et cetera. You haven't said one iota that any of that is poppycock. So, you said you accept it as such. So, you're not pushing back that that's a legitimate government interest. We're talking about human trafficking, et cetera, et cetera. I mean, you just haven't said that. Okay. So, the point is you say it goes too far. It bridles other industries, et cetera, et cetera. I'm going to give you two minutes, because I want to hear your answer. It bridles too much. Well, that's okay as long as there are reasonable other avenues for expression and communication. He iterates what those are. Now, I'm going to give him two minutes, because I took his time. But rather than just tell me what the facts in this record say and we'll read them, I want to hear you say what your pushback on legally what his argument is. He says it can go too far if there are these other avenues. He iterates what they are. Is that true or not? No. No, that's wrong, Your Honor. The adult bookstores have a constitutional right to operate a business and to sell material, and the adult 18 to 20-year-olds have a right to sell that material. And the purpose of this law is to reduce human trafficking with respect to employees. They have nothing, nowhere in the record, the pre-enforcement record, the whole record, there's not a single instance of an employee of an adult bookstore being trafficked. And if there's no evidence at all to support the proposition that human trafficking of 18 to 20-year-old adults at adult bookstores ever occurs, then it's a violation of the First Amendment for a law to prohibit the bookstore from employing an 18 to 20-year-old adult without any basis whatsoever, without any evidence in the record. Um, pre-enforcement or post-enforcement that would justify the claim that employees at adult bookstores have ever been trafficked. They just, there's just nothing to support that proposition. And so it violates, Renton says, it's got to affect only the category of businesses shown to produce the problem. And if the problem is human trafficking, and there's no evidence, and it applies to a category of businesses that has not been shown to produce that effect, then the law is unconstitutional. And that's what Renton says. And that's what H and A Land says. And illusions goes even further by saying that even if the underlying conduct is not protected by the First Amendment, it still would have to further the governmental interest, um, if it's going to be applied to a business that is constitutionally protected. So it's really, Your Honor, it isn't so much that, um, it's, it's above and beyond the fact that, that the, the evidence as properly found by the judge didn't, didn't support the proposition that the law, uh, actually furthered a substantial government interest when it came to adult bookstores and, uh, non-entertainer employees. But the legal conclusion was that that didn't matter, he said, not because there were alternative avenues of communication, not because there was sufficient evidence in the record. He said the reason that it didn't matter that they didn't prove anything with respect to adult bookstores and non-entertainer employees is because those employees are not engaged in speech. And that's the legal conclusion that we think is erroneous, both from a First Amendment standpoint and from this Court's decision in allusions. All right, counsel, we've got your point. You ended on... Thank you so much. You ended on a high note. Thank you. Appreciate your patience. All right. Thank you, counsel, for, uh...